**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-2271
_____

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS CONCUSSION INJURY
LITIGATION

Robin Cornish and Carleen Hastings,
                                                            Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2:12-md-02323)
District Court Judge: Honorable Anita B. Brody
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 12, 2026
_____

Before: SHWARTZ, MASCOTT, and McKEE, <u>Circuit Judges</u>.

(Filed: July 27, 2026)
_____
OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Robin Cornish and Carleen Hastings filed claims for payment for brain injuries their family members sustained while playing for the National Football League ("NFL"). The Claims Administrator denied their requests, and the Special Master affirmed the denial. The District Court overruled Appellants' objections and adopted the Special Master's decision. Because Appellants submitted diagnoses that were untimely under the unambiguous settlement, we will affirm.

I

A

A class of plaintiffs sued the NFL for brain injuries incurred by players, and the District Court preliminarily approved a settlement (the "Preliminary Settlement") on July 7, 2014 (the "Preliminary Approval Date"). In re Nat'l Football League Players' Concussion Inj. Litig., 301 F.R.D. 191, 195 (E.D. Pa. 2014). Under the Preliminary Settlement, claimants would be eligible for monetary awards only if the represented player "was diagnosed with a Qualifying Diagnosis," App. 1341, which included "Death with CTE,"[1] App. 1323. Article VI, § 6.3(f) of the Preliminary Settlement provided that "[a] Qualifying Diagnosis of Death with CTE shall be made only for . . . Players who died prior to the date of the Preliminary Approval and Class Certification Order, through a post-mortem diagnosis by a board-certified neuropathologist of CTE." App. 1342,

_____

[1] CTE is Chronic Traumatic Encephalopathy and can be diagnosed only after death.

2

1417. Thus, the Preliminary Settlement covered players who died and were diagnosed with CTE before July 7, 2014.

Some class members objected to the Preliminary Settlement, partly because it failed to alert class members that they would not be compensated for future diagnoses of "Death with CTE." App. 1576. Those objections, and statements at the final fairness hearing, showed that the objectors and class counsel understood that the Preliminary Settlement covered Death with CTE only if both the death and diagnosis occurred before the July 7, 2014, Preliminary Approval Date.

Upon considering these objections, the District Court instructed the parties that for the settlement to be fair, reasonable, and adequate, "[t]he Qualifying Diagnosis of Death with CTE should include . . . Players who die between preliminary approval and final approval of the Settlement." App. 2756. In response, the parties amended the settlement so that, under § 6.3(f), claimants representing players who died before the July 7, 2014, Preliminary Approval Date could recover only if the player was diagnosed with Death with CTE by the date of final approval.

After the amendments were submitted, putative class members objected to both the deadline for the Death with CTE diagnoses and the sufficiency of the notice of that deadline, see In re Nat'l Football League Players' Concussion Inj. Litig., 307 F.R.D. 351, 383-84, 401 (E.D. Pa. 2015), amended sub nom., In re Nat'l Football League Players' Concussion Inj. Litig., No. 2:12-md-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015), and aff'd sub nom., In re Nat'l Football League Players Concussion Inj. Litig., 821

3

F.3d 410 (3d Cir. 2016), as amended (May 2, 2016). The District Court considered these

objections, certified the class, and approved the amended settlement (the "Final

Settlement") [2] on April 22, 2015 (the "Final Approval Date"). In re Nat'l Football

League Players' Concussion Inj. Litig., No. 14-cv-00029-AB, 2015 WL 13706829, at *1-

2 (E.D. Pa. Apr. 22, 2015), aff'd, NFL, 821 F.3d 410. As to the objection concerning

notice, the Court found that because the amendments "improved the deal for Class

Members without providing any concessions to the NFL . . . an additional round of

notice for Class Members is unnecessary." NFL, 307 F.R.D. at 386. We affirmed the

District Court's order and held that the class notice was "reasonably calculated . . . to

apprise interested parties of the pendency of the action and afford them an opportunity to

---

[2] The Final Settlement defined "Settlement Agreement" as "this Settlement Agreement and all accompanying exhibits, including any subsequent amendments thereto," App. 2786, and provided that it "constitute[d] the entire agreement" and "supersedes all prior proposals, negotiations, letters, conversations, agreements, term sheets, and understandings," App. 2865. The District Court's Final Settlement approval order proclaimed, "[t]he terms of the Settlement Agreement . . . are forever binding on the Parties." In re Nat'l Football League Players' Concussion Inj. Litig., No. 14-cv-00029-AB, 2015 WL 13706829, at *3 (E.D. Pa. Apr. 22, 2015). To the extent Appellants argue they should not be bound by the Final Settlement because they lacked notice of the amendments, this collateral attack is not the proper avenue for that challenge. See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig., 431 F.3d 141, 146 (3d Cir. 2005) (holding that when class members have had the opportunity to challenge a matter and the matter has been decided, collateral attack is inappropriate).

4

present their objections," consistent with both due process and Federal Rule of Civil Procedure 23.[3] NFL, 821 F.3d at 435 (citation and quotation marks omitted).

After the Final Settlement was approved, answers to frequently asked questions ("FAQs") were "prepared by the NFL and posted on the Settlement website." Appellant Br. at 30 (citing App. 3417). Under the section titled "Monetary Awards," App. 3400-01, the FAQ "How is the date of a Qualifying Diagnosis determined?" is answered in part:

> Th[e] date [of a Qualifying Diagnosis] is important under the Settlement Agreement. It affects the amount of a Monetary Award, because the younger a Player is at the time of the Qualifying Diagnosis, the larger the award.
> . . .
> *Death with CTE:* For these claims, the date of the Qualifying Diagnosis is the date of the Player's death, even though the diagnosis is not made until after the Player dies. The Monetary Award is based on the Player's age when he died.

App. 3417. Another FAQ "Can the representative of a deceased . . . Player get a Qualifying Diagnosis for that Player now?" is answered in part:

> For a Qualifying Diagnosis of Death with CTE, the . . . Player had to have died before April 22, 2015, and received a post-mortem diagnosis of CTE from a board-certified neuropathologist before April 22, 2015. . . .

App. 3415.

B

Appellants represent NFL players who died in 2008 and were later diagnosed with Death with CTE. It is undisputed that their diagnoses occurred "some time after April

---

[3] We did not specifically address the notice with respect to any deadline for filing a CTE claim.

2015." In re Nat'l Football League Players' Concussion Inj. Litig., No. 2:12-md-023230-AB, 2025 WL 1913478, at *1, *10 (E.D. Pa. June 9, 2025).

Appellants' claims for compensation were denied, and the Special Master denied their appeals because (1) their diagnoses were untimely as they were made after the Final Settlement deadline, and (2) the absence of notice about the extended deadline for certain players did not violate due process because the Preliminary Settlement included a CTE deadline that would have applied to Appellants. NFL, 2025 WL 1913478, at *1.

The District Court overruled Appellants' objections and adopted the Special Master's decision.

Appellants appeal.

II[4]

Contrary to Appellants' arguments, the Final Settlement imposes a deadline for obtaining a Death with CTE diagnosis. Unfortunately, Appellants missed that deadline.

A[5]

Class "[s]ettlement agreements are interpreted according to 'basic contract principles.'" In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig., 706 F.3d 217, 223 (3d Cir. 2013) (quoting In re Cendant Corp. PRIDES Litig., 233

_____

[4] The District Court had jurisdiction under 28 U.S.C. § 1332(d). We have jurisdiction under 28 U.S.C. § 1291.
[5] We "review a district court's interpretation of settlement agreements, . . . for clear error." Nat'l Football League Players' Concussion Inj. Litig., 923 F.3d 96, 107 n.8 (3d Cir. 2019) (quotation marks and citation omitted).

6

F.3d 188, 193 (3d Cir. 2000)).  When a contract is "clear and unambiguous, its meaning 'must be determined from the four corners of the contract.'  In contrast, 'if the written contract is ambiguous, a court may look to extrinsic evidence to resolve the ambiguity and determine the intent of the parties.'"  Id. (citations omitted) (quoting Glenn Distribs. Corp. v. Carlisle Plastics, Inc., 297 F.3d 294, 300 (3d Cir. 2002)); Rainbow v. Swisher, 527 N.E.2d 258, 259 (N.Y. 1988).[6]

Section 6.3(f) of the Final Settlement provides that "[a] Qualifying Diagnosis of Death with CTE shall be made only for . . . Players who died prior to the Final Approval Date, through a post-mortem diagnosis made by a board-certified neuropathologist prior to the Final Approval Date."  App. 2805.[7]  Thus, to have a qualifying Death with CTE diagnosis, players must have passed away and received the required diagnosis before the April 22, 2015, Final Approval Date.  Because the CTE diagnosis can be made only after death, both the player's death must have occurred and the diagnosis must have been "made" by the neuropathologist "prior to the Final Approval Date."[8]  App. 2805.

---

[6] New York law governs the interpretation of the Final Settlement.

[7] The Final Settlement also provides an additional 270-day period for securing the diagnosis for players who passed away between the Preliminary Approval and Final Approval dates, which is not applicable here.

[8] Appellants do not assert either that any other provision of the Final Settlement contradicts that language or that the Final Settlement does not impose a deadline.  The evidence they rely on concerning their claims, including the Preliminary Settlement, Physician Certification Form, and February 19, 2019, FAQs, is extrinsic to the Final Settlement.  Because the Final Settlement "clear[ly] and unambiguous[ly]" imposed a deadline, we need not consider this extrinsic evidence to determine the Final Settlement's

Because the Final Settlement set the deadline for a Death with CTE diagnosis as April 22, 2015, and the diagnoses here were made after that deadline, the District Court did not err in adopting the Special Master's conclusion that the diagnoses were untimely.

$B^9$

Appellants argue in the alternative that if there was a diagnosis deadline for Death with CTE, they met it because the dates of their diagnoses were in fact the dates of the players' respective deaths in 2008. For this contention they rely on the answer to the FAQ about "[h]ow [] the date of a Qualifying Diagnosis is determined," which states that "the date of the Qualifying Diagnosis is the date of the Player's death, even though the diagnosis is not made until after the Player dies." App. 3417. Although the Special Master correctly observed that this FAQ is "awkward[]," several items in the FAQs—read in the context of the settlement—show that the FAQ addresses "the date from which payment for the

---

meaning. In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig., 706 F.3d 217, 223 (3d Cir. 2013).

Appellants also rely on the notices, which were attached as exhibits to the Final Settlement but the Final Settlement provides that "any inconsistency between this Settlement Agreement and any . . . exhibits . . . hereto will be resolved in favor of this Settlement Agreement," App. 2865, so even if the notices contradicted the Final Settlement, the Final Settlement would control.

[9] Because we "determin[e] the legal effect and consequences of [settlement] provisions," in this section, we are tasked with settlement construction as opposed to interpretation. See In re Nat'l Collegiate Student Loan Trs. 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3, 971 F.3d 433, 443 (3d Cir. 2020). We "appl[y] plenary review to a district court's construction of settlement agreements." NFL, 923 F.3d at 107 n.8 (internal quotation marks and citation omitted).

Diagnosis is calculated for the Program's payment grid, not the moment at which the Diagnosis occurs." NFL, 2025 WL 1913478, at *11 (emphasis omitted).

The FAQ itself acknowledges that the "date of the Qualifying Diagnosis" is different from when "the diagnosis is . . . made." App. 3417 ("[T]he date of the Qualifying Diagnosis is the date of the Player's death, even though the diagnosis is not made until after the Player dies."). Unlike the FAQ, § 6.3(f) specifically addresses the requirements for, not just the date of, a Qualifying Diagnosis of Death with CTE. Section 6.3(f) does not use the term "date of the Qualifying Diagnosis." Rather, it requires that Death with CTE diagnoses be "made . . . prior to the Final Approval Date." App. 2805. Because the FAQ acknowledges that the "date of the Qualifying Diagnosis" for purposes of calculating compensation is different from when the diagnosis is "made" for purposes of eligibility for payment, it is not inconsistent with § 6.3(f).

The FAQ answer on which Appellants rely shows that the "date of the Qualifying Diagnosis" is used for calculating the award itself and not eligibility for an award. App. 3417. This is supported by its surrounding context. Another FAQ answer provides that when a diagnosis is made or received can affect eligibility for an award: "Can the representative of a deceased . . . Player get a Qualifying Diagnosis for that Player now?" is answered in part:

> For a Qualifying Diagnosis of Death with CTE, the . . . Player had to have died before April 22, 2015, and received a post-mortem diagnosis of CTE from a board-certified neuropathologist before April 22, 2015. . . .

9

App. 3415.  This answer clearly restates § 6.3(f)'s deadline and, when read in connection with the FAQ cited by Appellants, shows a distinction between the "date of the Qualifying Diagnosis" for purposes of award calculation and when the diagnosis is "made" or "received" for purposes of award eligibility.  App. 2805, 3415, 3417.

Given § 6.3(f)'s plain language and the surrounding FAQ context, the Special Master properly concluded that "a Diagnosis for the purposes of 6.3(f) . . . occurs when a board-certified neuropathologist personally examines the decedent's brain tissue and concludes that it is marked by CTE."  NFL, 2025 WL 1913478, at *11.  Because Appellants' diagnoses were received after April 2015, they did not meet the April 22, 2015, diagnosis deadline.

## III

For the foregoing reasons, we will affirm.

10